# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| RANDOLPH HALL, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:18-00132-N |
| ) | |
| ANDREW M. SAUL, ) | |
| *Commissioner of Social Security*,[1] ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Randolph Hall brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Aug. 23, 2019)). This change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. §

consideration of the parties' briefs (Docs. 16, 17, 20) and those portions of the administrative record (Doc. 11) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).[3]

## I.   *Background*

Hall filed the subject applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA") on February 11, 2015. After they were initially denied, Hall requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, which was held on November 14, 2016. On March 16, 2017, the ALJ issued an unfavorable decision on Hall's applications, finding him not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 7 – 30).

The Commissioner's decision on Hall's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's decision on January 23, 2018. (R. 1 – 5). Hall subsequently brought this action under § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI

---

1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 25, 26).

benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4] "In determining whether substantial evidence exists, [a

---

[4] Nevertheless, "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him." *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *id.*, and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

Moreover, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district

court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").

However, the "substantial evidence" "standard of review applies only to

---

court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').").

findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*,

245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[5]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[5] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Hall met the applicable insured status

requirements through December 31, 2018, and that he had not engaged in substantial gainful activity since the alleged disability onset date of February 11, 2015.[7] (R. 12). At Step Two, the ALJ determined that Hall had the following severe impairments: dysfunction of knee status post two knee surgeries with chronic pain, limited intellectual functioning, and depression worsened by chronic pain. (R. 12 – 13). At Step Three, the ALJ found that Hall did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (R. 13 – 17).

At Step Four,[8] the ALJ determined that Hall had the residual functional

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[8] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. §

capacity (RFC) "to perform [less than a full range of] light work as defined in 20 CFR 404.1567(b) and 416.967(b)[,]"[9] with the following limitations: Hall "can lift and carry 20 pounds occasionally and 10 pounds frequently[;] can sit for 6 hours and alternate to standing position for 5 minutes after every 1 hour of standing[;] can walking [sic] for 6 hours and alternate to sitting position for 5 minutes after every 1 hour of walking[;] can push/pull as much as can lift/carry[;] can operate foot controls with right foot occasionally[;] can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds[;] can occasionally balance, stoop, kneel, crouch, and crawl[; e]nvironmentally, … can work at unprotected heights occasionally and … can work with moving mechanical parts occasionally[;] can work in environments with frequent exposure to weather, humidity, wetness, extreme cold frequently, extreme heat, and vibration[; m]entally, … is limited to understanding, remembering, carrying out, and performing only simple, routine tasks[;] can use

---

      404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

      In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. §§ 404.1567, 416.967.

judgment to make simple work-related decisions[;] can frequently respond appropriately to supervisors, coworkers, and the public[;] can handle changes in a routine work setting, but … is limited to making only simple work-related decisions." (R. 17 – 28).

Based on the RFC and the testimony of a vocational expert,[10] the ALJ determined that Hall was unable to perform any past relevant work. (R. 28). At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy that Hall could perform given his RFC, age, education, and work experience. (R. 28 – 30). Thus, the ALJ found that Hall was not disabled under the Social Security Act. (R. 30).

## IV. *Analysis*

Hall claims that the ALJ reversibly erred by failing to evaluate his obesity as required by Social Security Ruling 02-1P, 2002 WL 34686281 (Sept. 12, 2002).[11]

---

[10] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[11] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security…" *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

> This is not to say that [federal courts] are bound by agency rulings that interpret an agency's regulations. We are not. B. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981). But the Rulings are binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security

Hall is incorrect that "there is no mention anywhere in the ALJ's decision of Mr. Hall's obesity" (Doc. 17 at 10), as at Step Four the ALJ expressly acknowledged a diagnosis of obesity given by consultative examining physician Dr. Alan Babb (R. 359). However, because that was the full extent of the ALJ acknowledging a possible impairment of obesity, the undersigned cannot be satisfied that the ALJ gave this diagnosis appropriate consideration as required by SSR 02-1P.

At Step Two, an ALJ first determines whether an impairment is "medically determinable" based on objective medical evidence. *See* 20 C.F.R. §§ 404.1521, 416.921. "After [it is] establish[ed] that [the claimant] ha[s] a medically determinable impairment(s), then [the Commissioner] determine[s] whether [the] impairment(s) is severe." *Id. See also* SSR 02-1P, 2002 WL 34686281, at *3 (stating that the Commissioner will consider obesity in determining, *inter alia*, whether "[t]he individual has a medically determinable impairment[,]" and whether "[t]he individual's impairment(s) is severe."). SSR 02-1P provides that, "[w]hen

---

Administration."). We require the agency to follow its regulations "where failure to enforce such regulations would adversely affect 'substantive rights of individuals.' " First Ala. Bank, N.A. v. United States, 981 F.2d 1226, 1230 n.5 (11th Cir. 1993) (quoting Morton v. Ruiz, 415 U.S. 199, 232, 94 S. Ct. 1055, 39 L. Ed. 2d 270 (1974) ); see also Romano-Murphy v. C.I.R., 816 F.3d 707, 720 (11th Cir. 2016); Gonzalez v. Reno, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Agencies must respect their own procedural rules and regulations."). This is the case even where … "the internal procedures are more rigorous than otherwise would be required." Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam).

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (footnote omitted).

establishing the existence of obesity, [the Commissioner] will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height." 2002 WL 34686281, at *3. Dr. Babb's report (R. 357 – 359) appears to satisfy those criteria, and, as noted above, the ALJ uncritically acknowledged Dr. Babb's diagnosis of obesity at Step Four. *See* SSR 02-1P, 2002 WL 34686281, at *3 ("[I]n the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner.").[12]

In spite of Dr. Babb's diagnosis, at Step Two the ALJ failed to address whether obesity was a medically determinable impairment. Obesity was not listed among the severe or non-severe impairments the ALJ specifically identified. (R. 12 – 13).[13] Moreover, because obesity was "specifically mentioned in th[e ALJ's]

---

[12] Moreover, "[w]hen the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, … in most such cases [the Commssioner] will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity." 2002 WL 34686281, at *3. As both Hall and the Commissioner point out in their briefs, BMI measurements and height-and-weight measurements are located throughout the record.

[13] The ALJ did specifically find that Hall's impairments of hypertension and high cholesterol were non-severe. (R. 13). While those impairments are often associated with obesity, they do not necessarily imply the existence of obesity, nor is there any indication they capture all of the limiting effects of obesity. *See* SSR 02-1P, 2002 WL 34686281, at *3 ("Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus-even in children; gall bladder disease; hypertension; heart disease; peripheral vascular

decision" at Step Four, it cannot even be found to have been included in the ALJ's unusual "catch-all" provision at the end of Step Two, which stated that "the overall evidence of record supports a finding that any other condition, ***not specifically mentioned in this decision***, but that might be mentioned briefly in the record is not considered severe." (R. 13 (emphasis added)).

It is true that Step Two "acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). However, the ALJ's failure to address whether obesity was a medically determinable impairment at Step Two was not harmless error. "At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability. The ALJ must consider the applicant's medical condition taken as a whole. Likewise, the ALJ must consider the applicant's entire medical condition in determining whether the applicant can return to her past work (step four), and if not, whether the applicant can perform other work available in the national economy (step five)."

---

disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea []The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments.").

*Id.* In short, "[o]nce a case advances beyond step two, the ALJ must consider all impairments, severe or not, at step three and in assessing the RFC." *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (per curiam) (unpublished) (citing *Bowen v. Heckler*, 748 F.2d 629, 634–35 (11th Cir. 1984)). *See also* SSR 02-1P, 2002 WL 34686281, at *3 (stating that the Commissioner will also consider obesity in determining whether "[t]he individual's impairment(s) meets or equals the requirements of a listed impairment in the listings[,] and whether "[t]he individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy."). Therefore, if obesity was a medically determinable impairment, even if non-severe, the ALJ was required to consider it after Step Two. The ALJ's lone mention of a diagnosis of obesity at Step Four is insufficient to show whether she determine obesity to be a medically determinable impairment and, if so, that she considered it after Step Two.

The Commissioner argues that it should not matter whether the ALJ specifically addressed obesity because both Dr. Babb and Hall's treating physician, Dr. Charles Hartzog, Jr., opined that Hall was more capable than what the RFC limited him to. However, in order to affirm the Commissioner's final decision, the undersigned must be satisfied that the ALJ considered Hall's medical condition as a whole after proceeding beyond Step Two. *See Schink v. Comm'r of Soc. Sec.*, -- F.3d --, No. 17-14992, 2019 WL 4023639, at *16 (11th Cir. Aug. 27, 2019) (per curiam) ("If an ALJ fails to address the degree of impairment caused by the combination of

physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld."). And even if the medical opinions still substantially support the ALJ's RFC at Step Four, consideration of obesity along with Hall's other impairments might obviate the need to proceed to Step Four entirely if Hall is found to meet or equal a Listing at Step Three. *See* SSR 02-1P, 2002 WL 34686281, at *5 ("Obesity may be a factor in both 'meets' and 'equals' determinations. []Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing ... We may also find that obesity, by itself, is medically equivalent to a listed impairment ...").[14] For this reason, reversible error has been shown.[15]

Hall requests that the Commissioner's decision "be reversed, or in the alternative, remanded for further development." (Doc. 17 at 10). To the extent that

---

[14] Nothing in this decision should be read as compelling a particular factual finding, or conclusion regarding disability, on remand.

[15] Hall also claims that the ALJ erred by failing to include any limitations in the RFC regarding his ability to maintain concentration, persistence and pace to account for Hall's severe impairment of chronic pain. Because proper consideration of obesity might alter, or obviate the need for, the RFC, the undersigned finds it unnecessary to decide whether the ALJ also committed reversible error in this regard. Finally, Hall has argued that substantial evidence does not support the ALJ's reasons for discrediting Hall's subjective testimony as to the effects of his pain. Without passing on Hall's specific arguments on this point, the ALJ's credibility determination must fail in light of the determination that the ALJ's decision failed to adequately consider obesity. In order to affirm a credibility determination, an ALJ's decision must be "sufficient to enable this Court to conclude the ALJ considered [a claimant]'s medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (per curiam).

Hall is requesting as primary relief that the Commissioner be ordered to find her disabled, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (citation and quotations omitted). In the context of Social Security judicial review specifically, the Eleventh Circuit has recognized that remand to the Commissioner for further proceedings is generally warranted where "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,* Hall has failed to convince the undersigned that this standard is met here.[16]

---

[16] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is

Accordingly, the Court finds that the Commissioner's final decision denying Hall's applications for benefits is due to be **REVERSED** and **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings consistent with this decision.

V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Hall's February 11, 2015 applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further administrative proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Hall a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Hall be awarded Social Security benefits on the subject applications following this remand, the Court

---

appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

hereby grants Hall's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[17] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued for the subject applications, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 13th day of September 2019.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").